# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-01305

REBECCA HARRISON and VANESSA GUIJOSA
GONZALEZ, on behalf of themselves and those similarly
situated, and ZADEN SANCHEZ, CANDICE BOULDON,
MATT OGLE, KORY FINN, and DAVID RHOADS,
individually,

      Plaintiffs,

v.

WASHINGTON INVENTORY SERVICE d/b/a WIS
INTERNATIONAL, a Texas corporation,

      Defendant.

---

## DEFENDANT'S NOTICE OF REMOVAL

---

Defendant WIS IVS, LLC[1] ("WIS"), by and through its undersigned counsel, Ogletree,

Deakins, Nash, Smoak & Stewart, P.C., hereby removes this action from the District Court, Mesa

County, Case No. 2025CV30109, to the United States District Court for the District of Colorado

(the "Court") pursuant to 28 U.S.C. §§ 1332, 1367, 1441, and 1446. WIS removes this action on

the grounds that (1) there is complete diversity of citizenship between Plaintiffs Rebecca Harrison,

Vanessa Guijosa Gonzalez, Zaden Sanchez, Candice Bouldon, Matt Ogle, Kory Finn, and David

Rhoads ("Plaintiffs"), who are citizens of Colorado, and WIS, a citizen of Delaware and Texas;

---

[1] Plaintiffs improperly named WIS IVS, LLC as "Washington Inventory Service d/b/a WIS
International" ("WIS International"). At all relevant times, WIS IVS, LLC employed the named
Plaintiffs and the putative class members identified in the Complaint. Based on representations
from counsel for Plaintiffs, WIS understands Plaintiffs will shortly amend the Complaint to name
the proper Defendant, WIS.

and (b) the amount in controversy exceeds the jurisdictional minimum of $75,000 as set forth in 28 U.S.C. § 1332. Furthermore, to the extent any of the named Plaintiffs' claims do not meet the jurisdictional minimum of $75,000 established by 28 U.S.C. § 1332, which WIS disputes, this Court may exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367 and *Exxon Mobil Corp. v. Allapattah Svcs, Inc.*, 545 U.S. 546, 549 (2005) because the claims of the seven Plaintiffs are all so related that they form part of the same case or controversy and at least one of the Plaintiffs satisfies the amount in controversy requirement.

In addition to removing this matter, WIS specifically reserves its right to assert any defenses available under Rule 12 of the Federal Rules of Civil Procedure. In support of this Notice of Removal, WIS states as follows:[2]

## I.    PROCEDURAL BACKGROUND

1.      On March 21, 2025, Plaintiffs filed a civil Complaint against WIS in the District Court, Mesa County, Case No. 2025CV30109 ("State Court Action"), in which at least one party seeks a monetary judgment in excess of $100,000 against WIS.

2.      A copy of the entire case file in the State Court Action, including the Class Action Complaint for Unpaid Wages (the "Complaint"), as well as all processes, pleadings, and orders served upon WIS in the State Court Action, pursuant to 28 U.S.C. §1446(a), as well as the Register of Actions as required by D.C.COLO.LCivR 81.1(b), is attached as Exhibit A.

---

[2] WIS's filing of this Notice of Removal is not intended, nor should it be construed, as any type of express or implied admission of any fact, of the validity or merits of any of Plaintiffs' claims and allegations, or of any liability, all of which WIS expressly denies, or as any type of express or implied waiver or limitation of any of WIS's rights, claims, remedies, and defenses in connection with this action, all of which are hereby expressly reserved.

3.    WIS was served with the Complaint and Summons on March 26, 2025. (*See* Exhibit A, Affidavit of Process Server.)

4.    Plaintiffs assert five causes of action:

    a.    Failure to Pay Wages for all Work Performed on behalf of Representative Plaintiffs and all Class Members in violation of Colorado Wage and Hour Law, C.R.S. § 8-4-101, *et seq*. ("Colorado Wage Act" or "CWA") and 7 CCR 1103-1 ("Colorado Overtime and Minimum Standards Order" ("COMPS"));

    b.    Failure to Pay Overtime Premiums on behalf of Representative Plaintiffs and all Class Members in violation of the CWA and COMPS;

    c.    Failure to Comply with State Rest and Meal Break Requirements on behalf of Representative Plaintiffs and all Class Members in violation of the CWA and COMPS, Rule 5.1;

    d.    Violation of the CWA's Anti-Retaliation Provisions, C.R.S. § 8-4-120; and

    e.    Violation of the Colorado Healthy Families and Workplaces Act ("HFWA"), C.R.S. § 8-13.3-401, *et seq*., for Failure to Provide Paid Sick Leave on behalf of Plaintiff Rebecca Harrison.

(*See* Exhibit A, Complaint, ¶¶ 146-195.)

## II.    GROUNDS FOR REMOVAL

5.    This Court has original jurisdiction over this matter by virtue of 28 U.S.C. §§ 1332 and 1367 and may be removed by WIS pursuant to 28 U.S.C. § 1441(b) because it is between citizens of different states, and the amount in controversy exceeds $75,000, as follows.

**A.      The Citizenship of the Parties is Diverse.**

6.      Plaintiffs are citizens of the State of Colorado. Publicly available information indicates all seven Plaintiffs reside in Colorado and are either registered to vote or have a vehicle registered in Colorado. *See* Exhibit B, Declaration of Jason N.W. Plowman ("Plowman Decl."), ¶ 8; *see also* Ex. 4 to Ex. B.) Likewise, Plaintiffs allege in the Complaint they are residents of the State of Colorado. (*See* Exhibit A, Complaint, ¶ 1.)

7.      For removal purposes, a corporation is "deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business."  28 U.S.C. § 1332(c)(1).

8.      An unincorporated association is "deemed to be a citizen where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). Courts also consider the citizenship of all the entity's members for purposes of diversity. *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990).

9.      WIS International, the improperly named Defendant, is a corporation that is incorporated in the State of Delaware with its principal place of business in the State of Texas. (*See* Exhibit A, Complaint, ¶ 10; Exhibit C, Declaration of Richard Baxter, ¶ 4 ("Baxter Decl.".) WIS is, therefore, a citizen of both Delaware and Texas.

10.      WIS IVS, LLC, the proper Defendant in this matter and the entity that employed Plaintiffs, is a limited liability company with its principal place of business in the State of Texas and organized under the laws of Delaware. (*See* Baxter Decl., ¶ 5.) Moreover, WIS's one member, Retail Services WIS Corporation, is incorporated in the State of Delaware and has its principal place of business in Texas. (*Id.* at ¶ 5.) WIS is, therefore, a citizen of Delaware and Texas.

11.    Accordingly, the parties are citizens of different states.

12.    Because Plaintiffs and WIS (as well as WIS International) are citizens of different states, this is a civil action in which the district courts of the United States have original jurisdiction under 28 U.S.C. § 1332. As such, removal is proper because the Court has diversity jurisdiction.

**B.    The Amount in Controversy Exceeds $75,000 for Each Plaintiff.**

13.    In addition, pursuant to 28 U.S.C. § 1332(a)(1), this Court has original jurisdiction over Plaintiffs' claims because the amount in controversy for each named Plaintiff exceeds the sum or value of $75,000, exclusive of interests and costs.

14.    To determine the amount in controversy, the Court must first look at the allegations in the Complaint. *See, e.g., Klein Frank, P.C. v. Girards*, No. 12-cv-01843-PAB-KMT, 2012 WL 6720687, at *1-2 (D. Colo. Dec. 27, 2012). "The test for determining the amount in controversy is the pecuniary result to either party which the judgment would produce." *Ronzio v. Denver & R.G.W.R. Co.*, 116 F2d 604, 606 (10th Cir. 1940); *McPhail v. Deere & Co.*, 529 F.3d 947, 954 (10th Cir. 2008) (the sum for the amount in controversy can be either the value of what plaintiff seeks or what defendant may lose).

15.    WIS does not, however, have to prove the legal conclusion that the statutory amount is in fact in controversy or that Plaintiffs will in fact recover that amount. *McPhail*, 529 F.3d at 955-56. "The amount in controversy is not proof of the amount that the plaintiff[s] will recover. Rather, it is an estimate of the amount that will be put at issue in the course of litigation." *Id*. at 956.

16.    Once WIS establishes contested facts which support the requisite amount in controversy, WIS is entitled to stay in federal court unless it is "'legally certain' that less than

5

$75,000 is at stake. If the amount is uncertain then there is a potential controversy, which is to say that at least $75,000 is in controversy in the case." *Id*. at 954.

17.     In the Complaint, the named Plaintiffs and Class Members seek unpaid wages, penalties and attorneys' fees and costs for the alleged (1) failure to pay wages for all work performed, including travel time, (2) failure to pay overtime premiums, and (3) failure to comply with state rest and meal breaks requirements under the CWA and COMPS. (*See* Exhibit A, Complaint, ¶¶ 146-174.) In addition, the seven Plaintiffs seek unpaid wages, penalties, liquidated damages, and attorneys' fees and costs associated with WIS's alleged decrease in Plaintiffs' work hours in violation of the CWA's anti-retaliation provisions. (*See id*., Complaint, ¶¶ 175-185.) Finally, Plaintiff Harrison seeks unpaid sick leave and liquidated damages for WIS's alleged violation of the HFWA for failure to provide paid sick leave. (*See id*., Complaint, ¶¶ 186-195.)

### i.     Plaintiffs' Claims for Unpaid Wages Under the CWA.

18.     Under the CWA, an aggrieved individual may recover unpaid wages and attorneys' fees incurred in recovering the lost wages. Colo. Rev. Stat. Ann. § 8-4-110. In addition, if an employer "fails or refuses to pay . . . all earned, vested, and determinable wages or compensation within fourteen days after . . . a civil action or administrative claim for the wages or compensation is sent to or served on the employer, the employer is liable to the employee or group of similarly situated employees for the amount of the earned, vested, determinable, and unpaid wages or compensation plus an automatic penalty of . . . two times the amount of the unpaid wages or compensation" or "three times the amount of the unpaid wages" if the employee can show the employer's failure to pay was willful. Colo. Rev. Stat. Ann. § 8-4-109(3).

19.    The statute of limitations for a claim for unpaid wages under the CWA is two years unless the plaintiff alleges a willful violation, the statute of limitations is three years. Colo. Rev. Stat. Ann. § 8-4-122. Plaintiffs allege WIS's violations of the CWA were willful; therefore, the relevant period for purposes of Plaintiffs' CWA claims is the three-year period from March 21, 2022 to the present (the "Relevant Period"). (Exhibit A, Complaint, ¶¶ 151, 159, 173.)

20.    Plaintiffs allege that prior to January 15, 2025, they worked five days a week. (*Id.*, Complaint, ¶¶ 40, 51, 61, 71, 81, 91, 101.) In addition, Plaintiffs allege full-time employees regularly worked sixty hours per week and that prior to January 15, 2025, they were all full-time employees. (*Id.* at ¶ 105.) Plaintiffs also allege Harrison worked fifty hours on average prior to January 15, 2025. (*Id.* at ¶ 40.) For purposes of calculating the amount in controversy, WIS conservatively assumes all named Plaintiffs worked fifty hours per week prior to January 15, 2025. (Exhibit D, Declaration of Zachary Minute ("Minute Decl."), ¶ 20.)

> *a.    Plaintiffs' Claims for Failure to Comply with State Rest Break Requirements.*

21.    Under Colorado law, an individual is entitled to a ten-minute paid rest break for every four hours of work, or major fraction thereof. 7 Colo. Code Reg. § 1103-1, Rule 5.2. The failure to provide a rest break results in ten minutes of additional time worked that must be paid. *Id.* at Rule 5.2.4.

22.    Plaintiffs allege they missed twenty percent (20%) of their rest breaks. (Exhibit A, Complaint, ¶ 116.)

23.    If Plaintiffs worked ten hour shifts five days a week, Plaintiffs would have been entitled to approximately ten rest breaks per week or approximately 1,550 rest breaks during the Relevant Period. (Minute Decl., ¶ 10.) Therefore, Plaintiffs allege Harrison, Gonzalez and Ogle,

who worked throughout the Relevant Period, missed 310 breaks during the Relevant Period (1,550 x .2).[3] (Exhibit A, Complaint, ¶ 116; Minute Decl., ¶¶ 10-11.)

24.     Plaintiffs allege the remaining four Plaintiffs did not work during the entire Relevant Period. Specifically, Plaintiffs allege Sanchez started working for WIS in February 2024, Bouldon started in April 2022, Finn started in October 2023, and Rhoads started in August 2022. (Exhibit A, Complaint, ¶¶ 52, 62, 82, 92.). For purposes of this removal, WIS assumes each Plaintiff started on the first day of the month. Accordingly, Plaintiffs allege Sanchez was entitled to 580 rest breaks and missed 116 rest breaks; Bouldon was entitled to 1,530 rest breaks and missed 306 rest breaks; Finn was entitled to 750 rest breaks and missed 150 rest breaks; and Rhoads was entitled to 1,360 rest breaks and missed 272 rest breaks. (Minute Decl., ¶ 12.)

25.     While Plaintiffs allege they were compensated at hourly rates higher than minimum wage, for purposes of this calculation, WIS conservatively uses the Colorado minimum wage during the applicable year. In 2022, the Colorado minimum wage was $12.56 per hour. 7 Colo. Code Reg. § 1103-14, 1.2 (2022). In 2023, the Colorado minimum wage was $13.65 per hour. 7 Colo. Code Reg. § 1103-14, 1.2 (2023). In 2024, the Colorado minimum wage was $14.42 and in 2025, the Colorado minimum wage is $14.81. 7 Colo. Code Reg. § 1103-14, 1.2 (2024, 2025). Accordingly, the amounts in controversy for Plaintiffs' missed rest break claims are:

   a.  Harrison, Gonzalez, and Ogle: **$708.99 (each)**

   b.  Sanchez: **$280.65**

   c.  Bouldon: **$700.60**

---

[3] Plaintiffs went on strike and therefore did not work from approximately January 15, 2025 to February 25, 2025. (Exhibit A, Complaint, ¶¶ 120, 122.)

      **d.** Finn: **$359.19**

      **e.** Rhoads: **$629.28**

(Minute Decl., ¶¶ 11-13.)

### b. *Plaintiffs' Claims for Failure to Comply With State Meal Break Requirements.*

26.      Under Colorado law, employees are entitled to a thirty-minute, uninterrupted and unpaid meal break for all shifts that exceed five consecutive hours. 7 Colo. Code Reg. § 1103-1, 5.1.

27.      Plaintiffs allege they were not able to take an uninterrupted meal break, and are entitled to pay, fifty percent (50%) of the time. (Exhibit A, Complaint, ¶ 115; Minute Decl., ¶ 14.)

28.      For the duration of the Relevant Period, Plaintiffs would have been entitled to 775 meal breaks. (Minute Decl., ¶ 14.) Plaintiffs, therefore, claim Plaintiffs Harrison, Gonzalez, and Ogle did not receive an uninterrupted and duty-free meal break for 388 out of the 775 meal breaks to which they were entitled. (*Id.* at ¶¶ 14-15.) Conservatively assuming Plaintiffs made minimum wage during the applicable year, this claim adds **$2,652.38 (each)** to the amount in controversy for Plaintiffs Harrison, Gonzalez, and Ogle.

29.      Based on their alleged dates of hire, Plaintiffs allege Sanchez was entitled to 290 meal breaks and missed 145 uninterrupted meal breaks; Bouldon was entitled to 765 meal breaks and missed 383 uninterrupted meal breaks; Finn was entitled to 375 meal breaks and missed 188 uninterrupted meal breaks; and Rhoads was entitled to 680 meal breaks and missed 340 uninterrupted meal breaks. Accordingly, these claims add the following amounts to the amount in controversy for these four Plaintiffs:

      a. Sanchez: **$1,050.33**

    b.   Bouldon: **$2,621.98**

    c.   Finn: **$1,344.24**

    d.   Rhoads: **$2,355.08**

(Minute Decl., ¶¶ 16-17.)

### c.  Plaintiffs' Claims for Meal and Rest Break Penalties.

30.    Plaintiffs allege WIS willfully failed to provide meal and rest breaks under the CWA and seek the automatic penalties associated with a willful violation in the amount of three times the alleged wages owed. Therefore, the estimated penalties for Plaintiffs' meal and rest break claims are as follows:

    a.   Harrison, Gonzalez, Ogle: **$10,087.11 (each)**

    b.   Sanchez: **$3,992.94**

    c.   Bouldon: **$9,967.74**

    d.   Finn: **$5,110.29**

    e.   Rhoads: **$8,953.08**

(Minute Decl., ¶ 18.)

### d.  Plaintiffs' Claims For Travel Time Penalties.

31.    Plaintiffs allege WIS willfully failed to pay Plaintiffs for travel time, and therefore, are entitled to penalties under the CWA in an amount equal to three times the unpaid wages. (Exhibit A, Complaint, ¶ 152.) As Plaintiffs acknowledge in the Complaint, WIS issued retroactive payments for uncompensated travel time on or around January 15, 2025 in response to Plaintiffs' demands for payment in December 2024 (*i.e.*, more than 14 days following Plaintiffs' demand for payment of wages). (Exhibit A, Complaint, ¶¶ 120, 121; Minute Decl., ¶ 6.) Specifically, WIS

issued retroactive payments to the named Plaintiffs as follows: $7,449.46 to Harrison; $16,322.61 to Gonzalez; $3,947 to Sanchez; $5,729.79 to Bouldon; $13,925.85 to Ogle; $2,687 to Finn; and, $9,655.76 to Rhoads. (Minute Decl., ¶ 19.)

32.     For purposes of calculating the amount in controversy, WIS calculates the alleged penalties on these amounts by multiplying the retroactive payments by three as follows:

     a.  Harrison: **$22,348.38**

     b.  Gonzalez: **$48,967.83**

     c.  Sanchez: **$11,841**

     d.  Bouldon: **$17,189.37**

     e.  Ogle: **$41,777.55**

     f.  Finn: **$8,061**

     g.  Rhoads: **$28,967.28**

(*Id*.)

### ii.     Plaintiffs' Retaliation Claims Under the CWA.

33.     A plaintiff alleging retaliation under the CWA is entitled to back pay, the payment of wages unlawfully withheld, interest on unpaid wages, a penalty of $50 per day for each employee whose rights were violated, and liquidated damages in an amount equal to two times the amount of unpaid wages. Colo. Rev. Stat. Ann. § 8-4-120(3).

34.     Plaintiffs allege WIS retaliated against them after they allegedly complained about their wages by reducing their weekly hours on or around February 25, 2025. (Exhibit A, Complaint, ¶¶ 40, 51, 61, 71, 81, 91, 101.) Plaintiffs seek lost wages, interest, penalties, and liquidated damages as a result of the alleged retaliation. (*Id*. at ¶¶ 175-185.)

35.     For purposes of calculating the amount in controversy for these claims, WIS conservatively assumes Plaintiffs worked fifty hours a week prior to February 25, 2025. (Minute Decl., ¶ 20.) In addition, WIS conservatively assumes each of the named Plaintiffs were paid $14.81 per hour, the applicable minimum wage rate in 2025, which equates to $740.50 per week ($14.81 x 50). (*Id.*) As of the date of this removal, Plaintiffs have allegedly worked approximately nine weeks at reduced hours (with the exception of Rhoads, who alleges two weeks of reduced hours). (*Id.*)

36.     The amounts in controversy for Plaintiffs' alleged lost wages as a result of the alleged retaliation are as follows:

a.  Harrison: Harrison alleges her hours were reduced to twenty-five hours per week, which equals $370.25 per week. (Exhibit A, Complaint, ¶ 40.) The difference between Harrison's pay as a result of the alleged retaliation is, therefore, **$3,332.25** (($740.50-$370.25) x 9). (Minute Decl., ¶ 21a.)

b.  Gonzalez: Gonzalez alleges her hours were reduced to twenty-five hours per week, which equals $370.25 per week. (Exhibit A, Complaint, ¶ 51.) The difference between Gonzalez's pay as a result of the alleged retaliation is, therefore, **$3,332.25** (($740.50-$370.25) x 9). (Minute Decl., ¶ 21b.)

c.  Sanchez: Sanchez alleges his hours were reduced to thirty hours per week, which equals $444.30 per week. (Exhibit A, Complaint, ¶ 61.) The difference between Sanchez's pay as a result of the alleged retaliation is, therefore, **$2,665.80** (($740.50-$444.30) x 9). (Minute Decl., ¶ 21c.)

d. Bouldon: Bouldon alleges her hours were reduced to fifteen hours per week, which equals $222.15 per week. (Exhibit A, Complaint, ¶ 71.) The difference between Bouldon's pay as a result of the alleged retaliation is, therefore, **$4,665.15** (($740.50 - $222.15) x 9). (Minute Decl., ¶ 21d.)

e. Ogle: Ogle alleges his hours were reduced to twenty hours per week, which equals $296.20 per week. (Exhibit A, Complaint, ¶ 81.)  The difference between Ogle's pay as a result of the alleged retaliation is, therefore, **$3,998.70** (($740.50-$296.20) x 9). (Minute Decl., ¶ 21e.)

f. Finn: Finn alleges his hours were reduced to twenty-five hours per week, which equals $370.25 per week. (Exhibit A, Complaint, ¶ 91.) The difference between Finn's pay as a result of the alleged retaliation is, therefore, **$3,332.25** (($740.50-$370.25) x 9). (Minute Decl., ¶ 21f.)

g. Rhoads: Rhoads alleges his hours were reduced to twenty-nine hours for one week, which equals $429.49 and thirty-five hours for another week, which equals $518.35. (Exhibit A, Complaint, ¶ 101.) The difference between Rhoads's pay as a result of the alleged retaliation is, therefore, **$533.16** (($740.50 x 2) -$947.84). (Minute Decl., ¶ 21g.)

37.    Plaintiffs also allege they are entitled to liquidated damages in an amount equal to two times the unpaid wages above. (Exhibit A, Complaint, ¶ 185.) This, therefore, adds the following amounts to the amount in controversy for each Plaintiff:

a. Harrison: **$6,664.50**

b. Gonzalez: **$6,664.50**

13

      c.   Sanchez: **$5,331.60**

      d.   Bouldon: **$9,330.30**

      e.   Ogle: **$7,997.40**

      f.   Finn: **$6,664.50**

      g.   Rhoads: **$1,066.32**

(Minute Decl., ¶ 22.)

38.     Furthermore, Plaintiffs seek a penalty of $50 per day for each Plaintiff who allegedly suffered retaliation, which adds **$3,150** to the amount in controversy for each Plaintiff, except for Rhoads for whom it adds **$700** to the amount in controversy. (Exhibit A, Complaint, ¶ 185; (Minute Decl., ¶ 23.)

### iii.   Summary of Wages and Penalties in Controversy.

39.     As set forth above, and while WIS denies that Plaintiffs are entitled to recover any such amounts, the allegations detailed above result in the following amounts in controversy:

| Plaintiff | Wages Claimed for Alleged Meal and Rest Break Violations | Penalties (3x) for Alleged Meal and Rest Break Violations | Lost Wages Due to Alleged Retaliation | Penalties (2x plus $50 per day) for Alleged Retaliation | Penalties (3x) for Unpaid Travel Time | Total |
|---|---|---|---|---|---|---|
| Harrison | $3,361.37 | $10,087.11 | $3,332.25 | $9,814.50 | $22,953 | **$49,546.97** |
| Gonzalez | $3,361.37 | $10,087.11 | $3,332.25 | $9,814.50 | $48,759 | **$75,352.97** |
| Sanchez | $1,330.98 | $3,992.94 | $2,665.80 | $8,481.60 | $11,844 | **$28,315.32** |
| Bouldon | $3,322.58 | $9,967.74 | $4,665.15 | $12,480.30 | $17,190 | **$47,627.35** |
| Ogle | $3,361.37 | $10,087.11 | $3,998.70 | $11,147.40 | $41,781 | **$70,374.32** |
| Finn | $1,703.43 | $5,110.29 | $3,332.25 | $9,814.50 | $8,058 | **$28,020.01** |
| Rhoads | $2,984.36 | $8,953.08 | $533.16 | $1,766.32 | $28,848 | **$43,014.28** |

(Minute Decl., ¶ 24.)

40.     WIS has not calculated the amount in controversy as it relates to all of the claims brought by Plaintiffs. Plaintiffs also allege they were not paid for pre-inventory work, post-inventory work, and applicable overtime, and Plaintiff Harrison alleges WIS violated the HFWA by failing to account for all hours worked for purposes of accruing sick leave, among other allegations. All of these claims, while not calculated here, further increase the amount in controversy.

### iv.   Plaintiffs' Attorneys' Fees Must Be Included in Considering Amount in Controversy.

41.     Plaintiffs also seek to recover an unspecified amount of attorneys' fees. (Exhibit A, Complaint, ¶¶ 128, 152, 161, 174, 185; p. 26, ¶ F.)

42.     The Tenth Circuit has held that where an award of attorneys' fees is authorized by statute, a court <u>must</u> recognize these fees in the amount in controversy. *Miera v. Dairyland Ins. Co.*, 143 F.3d 1337, 1340 (10th Cir. 1998).

43.     Plaintiffs' counsel, David H. Miller of Wilhite & Miller Law Firm, submitted a declaration in connection with an attorneys' fees award in a wage and hour class and collective action. (*See* Exhibit B, Plowman Decl., Ex. 3 (Declaration of David H. Miller in *Bodi v. Kandle Dining Servs., Inc.*, No. 1:22-cv-02491 (D. Colo. Apr. 5, 2024).)

44.     Mr. Miller's declaration states his billable rate, as of March 14, 2024, was $650.00 per hour. (Plowman Decl.at ¶ 6; *see also* Ex. 3 to Ex. B.) Mr. Miller's declaration also states he worked approximately 185 hours on the matter (Plowman Decl. at ¶ 6), which had only one representative plaintiff and a single, straight-forward set of facts giving rise to the overtime and minimum wage claims. (*Id*.) The matter resolved shortly after plaintiff filed a motion for FLSA conditional certification. (*Id.*)

15

45.    Attorneys' fees in wage and hour cases can routinely exceed $1,000,000. *See*, *e.g.,* *Garcia v. Tyson Foods, Inc*., 770 F.3d 1300, 1312 (10th Cir. 2014) (upholding attorneys' fee award of $3,389,207.41 in wage and hour class action).

46.    Through a trial in this matter, and for purposes of this Notice of Removal, WIS conservatively assumes Plaintiffs' counsel will work 525 hours at a billable rate of $650.00, plus additional work performed by a more junior attorney. (Plowman Decl., ¶ 7.) WIS reasonably expects Plaintiffs' counsel will spend well in excess of 525 billable hours on this matter given the fact that there are seven named Plaintiffs as well as a putative class. The case will likely require pre-discovery litigation, including conferences on various responsive motions and stipulations on briefing schedules regarding the same; written discovery for seven Plaintiffs and class discovery; depositions of seven Plaintiffs and several WIS witnesses; briefing for motions for class certification, decertification, and summary judgment; and, finally, a trial for seven individual plaintiffs and potentially a class.

47.    Accordingly, WIS conservatively estimates Plaintiffs' total attorneys' fees will meet or exceed **$341,250.**

### v.    <u>Summary of Amount in Controversy.</u>

48.    As set forth above, and while WIS denies that Plaintiffs are entitled to recover any such amounts, the allegations in the Complaint satisfy the requisite $75,000 amount in controversy, per Plaintiff, for purposes of removal under 28 U.S.C. §§ 1332, 1441(a) and 1446, when the claimed damages and attorneys' fees set forth above are totaled.

49.    This is further supported by Plaintiffs' allegation in the Complaint that at least one party seeks a monetary judgment from WIS of more than $100,000, exclusive of interests and

costs. (*See* Exhibit A, Complaint, ¶ 16); *see also* Colo. R. Civ. P. 16.1(b)(2) (stating simplified procedure does not apply to "civil actions in which <u>any one party</u> seeks monetary judgment from any other party of more than $100,000…") (emphasis added).

**C.    Given At Least One Plaintiff Claims More Than $75,000 in Controversy, The Court May Also Exercise Supplemental Jurisdiction Over The Other Plaintiffs.**

50.    To the extent it is "legally certain" that any of the named Plaintiffs cannot meet the $75,000 jurisdictional threshold (which it is not), *McPhail*, 529 F.3d at 954, the Court may exercise supplemental jurisdiction over such claims because the claims of all named Plaintiffs are all so related that they form part of the same case or controversy and at least one of the Plaintiffs satisfies the amount in controversy requirement. *See* 28 U.S.C. § 1367; *Exxon Mobil Corp.*, 545 U.S. at 549 (holding "where the other elements of jurisdiction are present, and at least one named plaintiff in the action satisfies the amount-in-controversy requirement, [28 U.S.C.] § 1367 does authorize supplemental jurisdiction over the claims of the other plaintiffs in the same Article III case or controversy, even if those claims are for less than the jurisdictional amount specified in the statute setting forth the requirements for diversity jurisdiction."). Indeed, all seven Plaintiffs bring the same wage claims arising out of their employment with WIS and seek to represent a class of similarly situated individuals. (Exhibit A, Complaint.)

51.    As set forth above, Gonzalez and Ogle easily meet the amount in controversy as their claims detailed in this removal (again, understanding they have additional claims not calculated herein), and *exclusive of attorneys' fees*, place approximately $74,679.74 and $70,367.54, respectively, in controversy. Moreover, the Complaint confirms that, under Colo. R. Civ. P. 16.1(b)(2) (requiring amount in controversy to be "exclusive of reasonable allowable attorney fees"), at least one party seeks a monetary judgment in excess of $100,000 against WIS.

(Exhibit A, Complaint, ¶ 16.)  While the Complaint does not identify which Plaintiff that may be, as stated, there is at least one and the Court may exercise supplemental jurisdiction over all other Plaintiffs.

**D.      This Removal Notice Is Timely Filed.**

52.      WIS is filing this Notice of Removal within thirty days of service of Plaintiffs' Complaint, which occurred on March 26, 2025. (*See* Exhibit A, Affidavit of Process Server.) Removal of this action is, therefore, timely under 28 U.S.C. § 1446(b)(1) and (b)(2)(B).

**E.      This Court Is a Proper Venue for Plaintiffs' Claims against Defendant.**

53.      Pursuant to 28 U.S.C. § 1441(a), any civil action commenced in a state court asserting a claim over which the District Courts of the United States have original jurisdiction may be removed to the United States District Court embracing the state court where the action is pending. This District Court's geographical jurisdiction encompasses Mesa County, Colorado. Therefore, this Court is a proper venue for this lawsuit.

**F.      Jurisdictional Pre-Requisites to Removal Have Been Met.**

54.      WIS has heretofore sought no similar relief.

55.      Pursuant to 28 U.S.C. § 1446(d), WIS is giving written notice of this removal to all parties and filing a copy of the notice with the Clerk of the District Court, Mesa County. *See* 28 U.S.C. § 1446(d).

### III.    CONCLUSION

For the foregoing reasons, the State Court Action may be and hereby is properly removed

to this Court. *See* 28 U.S.C. §§ 1332, 1367 1441, and 1446. In filing this Notice of Removal, WIS

reserves any defenses available to it in this action.

WHEREFORE, Defendant WIS IVS, LLC hereby removes this action from the Colorado

District Court, Mesa County, to the United States District Court for the District of Colorado.

Respectfully submitted this 25th day of April, 2025.

OGLETREE, DEAKINS, NASH, SMOAK
& STEWART, P.C.

*s/ Jason N.W. Plowman*

Michael H. Bell
Rebecca M. Lindell
2000 South Colorado Boulevard
Tower Three, Suite 900
Denver, CO  80222
Telephone:  303.764.6800
Facsimile:  303.831.9246
mike.bell@ogletree.com
rebecca.lindell@ogletree.com

Jason N.W. Plowman
15 West South Temple, Suite 950
Salt Lake City, UT 84101
Telephone: 801.658.6100
Facsimile:  385.360.1707
jason.plowman@ogletree.com

*Attorneys for Defendant WIS IVS, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of April, 2025, I electronically filed the foregoing **DEFENDANT'S NOTICE OF REMOVAL** with the Clerk of Court using the CM/ECF system and electronically served a true and accurate copy of the same upon Plaintiffs' counsel, as follows:

Trent R. Taylor
David H. Miller
Wilhite & Miller Law Firm
1600 Ogden Street
Denver, Colorado 80218
303.839.1650
ttaylor@wilhitelawfirm.com
dhmiller@wilhitelawfirm.com

*s/ Alison L. Shaw*
Alison L. Shaw, Paralegal

20