| | |
|---|---|
| District Court, Mesa County, Colorado<br>125 N. Spruce Street<br>Grand Junction, CO 81501 | DATE FILED<br>March 21, 2025 4:02 PM<br>FILING ID: A94A441CB5495<br>CASE NUMBER: 2025CV30109 |
| **REBECCA HARRISON and**<br>**VANESSA GUIJOSA GONZALEZ**, on behalf of<br>themselves and those similarly situated, and **ZADEN**<br>**SANCHEZ, CANDICE BOULDON, MATT OGLE,**<br>**KORY FINN, and DAVID RHOADS** individually,<br><br>         Plaintiffs,<br>v.<br><br>**WASHINGTON INVENTORY SERVICE d/b/a**<br>**WIS INTERNATIONAL,** a Texas corporation,<br><br>         Defendant. | <br><br><br><br><br><br><br><br><br>COURT USE ONLY |
| Trent R. Taylor Atty Reg. 61007<br>David H. Miller, Atty Reg. 8405<br>THE WILHITE & MILLER LAW FIRM<br>1600 N. Ogden Street<br>Denver, Colorado 80218<br>Phone: (303) 839-1650<br>Facsimile: (303) 832-7102<br>ttaylor@wilhitelawfirm.com<br>dhmiller@wilhitelawfirm.com<br>Attorneys for the Plaintiff | Case No:<br><br>Division: |
| **INDIVIDUAL AND CLASS ACTION COMPLAINT** | |

      Rebeca Harrison ("Harrison") and Vanessa Guijosa Gonzalez ("Guijosa") (collectively "Representative Plaintiffs") on behalf of themselves and all others similarly situated, and through the undersigned counsel from the Wilhite & Miller Law Firm, pursuant to Article XVIII, Section 15 of the Colorado Constitution, the Colorado Wage Act, C.R.S. § 8-4-101 *et seq.*, and the Colorado Overtime and Minimum Pay Standards Orders, 7 CCR 1103-1 (2022-2025) (collectively "Colorado Wage and Hour Law"), as their Individual and Class Action Complaint against the Defendant, Washington Inventory Service d/b/a WIS International ("WIS" or "Defendant"), and state as follows.  In addition, the Representative Plaintiffs along with Zaden Sanchez ("Sanchez"), Candice Bouldon ("Bouldon"), Matt Ogle ("ogle"), Kory Finn  ("Finn"), and David Rhoads ("Rhoads") bring forth individual claims under the anti-retaliation provisions

of the Colorado Wage Act, C.R.S. § 8-4-121.:  Finally, Rebecca Harrison also individually asserts a claim under the Healthy Families and Workplace Act, C.R.S.  §8-13.3-401, *et seq.*

## PARTIES

1.      Plaintiffs Harrison, Guijosa, Sanchez, Bouldon, Ogle, Finn, and Rhoads are Colorado residents.

2.      Harrison has been employed by Defendant from approximately 2013 until the present.

3.      Guijosa was employed by Defendant from approximately August of 2017 until approximately April of 2024.

4.      Plaintiff Sanchez has been employed by Defendant from approximately February 2024 until the present.

5.      Plaintiff Candice Bouldon has been employed by Defendant from approximately April 2022 until the present.

6.      Plaintiff Ogle has been employed by Defendant from approximately March 2022 until the present.

7.      Plaintiff Kory Finn has been employed by Defendant from approximately October 2023 until the present.

8.      Plaintiff David Rhoads has been employed by Defendant from approximately August 2022 until the present.

9.      Plaintiffs may be contacted through their counsel of record at the Wilhite & Miller Law Firm, located at 1600 N. Ogden Street, Denver, Colorado 80218.

10.      WIS is a Texas company, the principal office for which is located at 7950 Legacy Drive, Plano, TX 75024, which also serves as its principal mailing address.

## JURISDICTION AND VENUE

11.      Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

12.      This Court has original jurisdiction over this civil action pursuant to Article 6 § 9(1) of the Colorado Constitution.

13.     WIS maintains a business location in Mesa County, Colorado and conducts substantial business in this jurisdiction.

14.     The facts and circumstances giving rise to this Complaint occurred in part in Mesa County, Colorado.

15.     Venue is proper under C.R.C.P. 98 (b) and (c) because WIS conducts business in Mesa County, Colorado and Plaintiffs seek penalties under the C.R.C.P. Rule 98(b)(1).

16.     This case is brought under C.R.C.P. Rule 16 because Plaintiffs and the putative class members seek a monetary judgment from the Defendant of more than $100,000, exclusive of interests and costs. *See* C.R.C.P. Rule 16.1(b)(2).

17.     At the time of the filing of this Complaint, and from the records of the Colorado Secretary of State, it does not appear that WIS has registered to do business within the state of Colorado and accordingly, with respect to this lawsuit, WIS is subject to the penalties and provisions of C.R.S. §7-90-802.

18.     During the times relevant to this Complaint the Defendant has employed more than 16 employees within the state of Colorado at any one time.

## FACTUAL ALLEGATIONS

19.     Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

20.     At all times relevant to this Complaint, Plaintiffs and the Class Members were "employee[s]" of WIS under the Colorado Wage and Hour Law. See C.R.S. § 8-4-101(5).

21.     WIS is an international inventory services company which provides global inventory services, data collection and technology innovation services to various retailers throughout the United States and other countries.

22.     At all times relevant to this Complaint, Representative Plaintiffs and the putative class members have performed labor or services for the benefit of WIS.

23.     At all times relevant to this Complaint, WIS has received revenue for the work performed by Representative Plaintiffs and the putative class members.

### Facts Relating to Plaintiff Rebecca Harrison

24.     During all times material to this Complaint, Harrison has worked as an inventory specialist for Defendant and has worked out of Defendant's location at 3198 Patterson Road, No. 105, Grand Junction, CO 81504.

25.     Defendant hired Plaintiff Harrison in approximately November 2013 to work as an inventory specialist.

26.     At the commencement of her employment, Defendant paid Plaintiff Harrison at the hourly rate of $21.00 for inventory work performed in the retail stores where Defendant provides inventory services. Defendant, separately, has paid Plaintiff Harrison the applicable minimum wage rate for time spent traveling to and from retail store locations, but has not compensated Plaintiff Harrison for the first hour spent traveling from its loading station to the inventory sites (retail stores), and the last hour spent traveling back from the inventory sites to the loading site.

27.     Additionally, Defendant has not paid Plaintiff Harrison for the time spent traveling between inventory sites within a given day and has not compensated Plaintiff Harrison for time spent after completing inventory and before departure from the inventory site.

28.     In approximately mid-October of 2024, Plaintiff Harrison notified Defendant in writing that she would be undergoing an urgent and necessary inpatient medical procedure on or around November 7, 2025, and accordingly requested paid sick medical leave for her planned absence.

29.     Shortly thereafter, Defendant's human resources representative informed Plaintiff Harrison that she had not accumulated enough hours of work to permit her to take additional medical leave during that year.

30.     However, Defendant's records of the hours Ms. Harrison had worked in the relevant time frame were grossly understated, because Defendant had not properly recorded all the hours Ms. Harrison had worked in the relevant time period because it had failed to account for travel time and other work Ms. Harrison had performed as part of her job duties.

31.     Accordingly, Plaintiff Harrison was forced to take unpaid leave for an the entirety of her medical-related absence.

32.     Subsequently on approximately March 19, 2025, Plaintiff Harrison made a follow-up request for compensation in writing for the medical leave she had taken in November of 2024.

33.     To date, Defendant has not responded to Plaintiff's request, nor has it compensated her for her time spent on medical leave in November of 2024.

4

34.     On approximately December 31, 2024, Harrison and other WIS workers based out of Grand Junction, Colorado informed Defendant that they would be going out on strike on January 15, 2025, unless WIS satisfied her and other workers' wage demands that they had submitted to WIS on forms provided to them by the Colorado Department of Labor and Employment (CDLE), in addition to meeting other demands.

35.     On approximately January 15, 2025, WIS issued Harrison a check for previously uncompensated travel time, but did not provide her with a pay stub or other documents detailing the number of hours for which she was compensated nor the rate at which it compensated her for those hours of work.

36.     As Defendant had failed to meet its legal obligations, or Plaintiff's and the other workers' demands, and noting that it had retaliated against a worker for engaging in protected activity, Plaintiff Harrison and the other workers went out on strike on January 15, 2025.

37.     On January 30, Harrison and the other workers informed WIS that they would unconditionally return to work with respect to all local jobs in Mesa County, beginning on February 1, 2025.

38.     On February 6, 2025, Defendant informed Harrison and the other striking workers that it would not reinstate Plaintiff and the other striking employees' employment unless they agree to travel without full compensation. WIS informed Harrison and the other workers that if they did not agree to these terms, they would be permanently terminated.

39.     Fearing the permanent loss of their jobs, Harrison and several other workers notified WIS On February 13, 2025, that they would unconditionally return to work on February 20, 2025.

40.     Plaintiff Harrison returned to work on February 20, 2025.  However, Defendant refused to place her back on her regular full-time schedule and instead scheduled her for two (2) days-a-week of work instead of her previously scheduled five (5) day a week work schedule, thereby reducing her weekly hours from approximately fifty (50) hours a week to approximately twenty (20) to twenty-five (25) hours a week.

### Facts Relating to Plaintiff VANESSA Guijosa

41.     In approximately August of 2017, Defendant hired Plaintiff Guijosa as an inventory specialist to work out of its location based at 3198 Patterson Road, No. 105, Grand Junction, CO 815.

42.     In approximately 2021, Defendant promoted Ms. Guijosa to work as an inventory supervisor where she performed services for Defendant out of the same location.

43.     During all times material to this Complaint, Defendant has paid Ms. Guijosa at the hourly rate of $18.00 for all inventory services she performed in retail stores other than pharmacies.  For all inventory services Plaintiff Guijosa has performed in pharmacies, Defendant has paid Plaintiff Guijosa at the hourly rate of $19.00 per hour. For travel time performed by Guijosa, Defendant has paid Ms. Guijosa at the applicable state minimum wage. However, Defendant has not compensated Plaintiff Guijosa for the first hour of travel out to a work site or the last hour of travel back from a work site.

44.     In addition, Defendant has not paid Plaintiff Guijosa for the time spent traveling between inventory sites within a given day and has not compensated Plaintiff Guijosa for time spent after completing inventory and before departure from the inventory site.

45.     On approximately December 31, 2024, Guijosa and other WIS workers based out of Grand Junction, Colorado informed Defendant that they would be going out on strike on January 15, 2025, unless WIS satisfied her and other workers' wage demands that they had submitted to WIS on forms provided to them by the Colorado Department of Labor and Employment (CDLE), in addition to meeting other demands.

46.     On approximately January 15, 2025, WIS issued Guijosa a check for previously uncompensated travel time, but did not provide her with a pay stub or other documents detailing the number of hours for which she was compensated nor the rate at which it compensated her for those hours of work.

47.     As Defendant had failed to meet its legal obligations, or Plaintiff's and the other workers' demands, and noting that it had retaliated against a worker for engaging in protected activity, Plaintiff Guijosa and the other workers went out on strike on January 15, 2025.

48.     On January 30, 2025, Guijosa and the other workers informed WIS that they would unconditionally return to work with respect to all local jobs in Mesa County, beginning on February 1, 2025.

49.     On February 6, 2025, Defendant informed Guijosa and the other striking workers that it would not reinstate Plaintiff and the other striking employees' employment unless they agreed to travel without full compensation. WIS informed Guijosa and the other workers that if they did not agree to these terms, they would be permanently terminated.

50.     Fearing the permanent loss of her job, Guijosa notified WIS On February 13, 2025, that she would unconditionally return to work on February 20, 2025.

51.     Plaintiff Guijosa returned to work on February 20, 2025.  However, Defendant refused to place her back on her regular full-time schedule and instead scheduled her for two (2) days-a-week of work instead of her previously scheduled five (5) day a week work schedule,

thereby reducing her weekly hours from a full-time schedule to approximately twenty (20) to twenty-five (25) hours a week.

## FACTS RELATING TO PLAINTIFF ZADEN SANCHEZ

52.    Plaintiff Sanchez began working for Defendant in approximately February of 2024.

53.    At all times during his employment for Defendant, Defendant has compensated Mr. Sanchez at the rate of $18.00 for all inventory work performed in stores and the applicable state minimum wage for travel time.  However, Defendant has not compensated Plaintiff Sanchez for the first hour of travel out to a work site or the last hour of travel back from a work site.

54.    In addition, Defendant has not paid Plaintiff Sanchez for the time spent traveling between inventory sites within a given day and has not compensated Plaintiff Sanchez for time spent after completing inventory and before departure from the inventory site.

55.    On approximately December 31, 2024, Plaintiff Sanchez and other WIS workers based out of Grand Junction, Colorado informed Defendant that they would be going out on strike on January 15, 2025, unless WIS satisfied his and other workers' wage demands that they had submitted to WIS on forms provided to them by the Colorado Department of Labor and Employment (CDLE), in addition to meeting other demands.

56.    On approximately January 15, 2025, WIS issued Sanchez a check for previously uncompensated travel time, but did not provide him with a pay stub or other documents detailing the number of hours for which he was compensated nor the rate at which it compensated him for those hours of work.

57.    As Defendant had failed to meet its legal obligations, or Plaintiff's and the other workers' demands, and noting that it had retaliated against a worker for engaging in protected activity, Plaintiff Sanchez and the other workers went out on strike on January 15, 2025.

58.    On January 30, 2025, Sanchez and the other workers informed WIS that they would unconditionally return to work with respect to all local jobs in Mesa County, beginning on February 1, 2025.

59.    On February 6, 2025, Defendant informed Sanchez and the other striking workers that it would not reinstate Plaintiff and the other striking employees' employment unless they agreed to travel without full compensation. WIS informed Sanchez and the other workers that if they did not agree to these terms, they would be permanently terminated.

60.     Fearing the permanent loss of his job, Sanchez notified WIS On February 13, 2025, that he would unconditionally return to work on February 20, 2025.

61.     Plaintiff Sanchez returned to work on approximately February 20, 2025. However, Defendant refused to place him back on his regular full-time schedule and instead scheduled him for approximately three (3) days a week of work instead of his previously scheduled five (5) day a week work schedule, thereby reducing his weekly hours from a full-time schedule to approximately 25-30 hours a week.

## FACTS RELATING TO PLAINTIFF CANDICE BOULDON

62.     Plaintiff Candice Bouldon was hired by Defendant as an inventory specialist for WIS in Grand Junction, Colorado in approximately April of 2022.

63.     At all times during her employment for Defendant, Defendant has compensated Ms. Bouldon at the rate of $18.00 for all inventory work performed in stores and the applicable state minimum-wage for travel time. In addition, Defendant has compensated Bouldon at the rate of $19.00/hour for all inventory work performed in pharmacies.  However, Defendant has not compensated Plaintiff Bouldon for the first hour of travel out to a work site or the last hour of travel back from a work site.

64.     In addition, Defendant has not paid Plaintiff Bouldon for the time spent traveling between inventory sites within a given day and has not compensated Plaintiff Bouldon for time spent after completing inventory and before departure from the inventory site.

65.     On approximately December 31,2024, Plaintiff Bouldon and other WIS workers based out of Grand Junction, Colorado informed Defendant that they would be going out on strike on January 15, 2025, unless WIS satisfied her and other workers' wage demands that they had submitted to WIS on forms provided to them by the Colorado Department of Labor and Employment (CDLE), in addition to meeting other demands.

66.     On approximately January 15, 2025, WIS issued Bouldon a check for previously uncompensated travel time, but did not provide her with a pay stub or other documents detailing the number of hours for which she was compensated nor the rate at which it compensated her for those hours of work.

67.     As Defendant failed to meet its legal obligations, or Plaintiff's and the other workers' demands, and noting that it had retaliated against a worker for engaging in protected activity, Plaintiff Bouldon and the other workers went out on strike on January 15, 2025.

68.    On January 30, 2025, Plaintiff Bouldon and the other workers informed WIS that they would unconditionally return to work with respect to all local jobs in Mesa County, beginning on February 1, 2025.

69.    On February 6, 2025, Defendant informed Bouldon and the other striking workers that it would not reinstate Plaintiff and the other striking employees' employment unless they agreed to travel without full compensation. WIS informed Bouldon and the other workers that if they did not agree to these terms, they would be permanently terminated.

70.    Fearing the permanent loss of her job, Bouldon notified WIS On February 13, 2025, that she would unconditionally return to work on February 20, 2025.

71.    Defendant did not place Plaintiff Bouldon back on the work schedule until February 25, 2025.  Defendant refused to place her back on her regular full-time schedule and instead scheduled her for approximately 10-15 hours of work a week, instead of her previous full-time work schedule, In addition, although Plaintiff had previously performed work as a driver assigned to drive her fellow employees to and from inventory sites, Defendant has refused to reinstate her as a driver or provide the benefits associate with such.  .

## FACTS RELATING TO PLAINTIFF MATT OGLE

72.    Plaintiff Ogle began working for Defendant as an inventory specialist in approximately March of 2022.

73.    At all times during his employment for WIS, Defendant has compensated Mr. Ogle at the rate of $18.00 for all inventory work performed in stores and the applicable state minimum wage for travel time.  However, Defendant has not compensated Plaintiff for the first hour of travel out to the work site or the last hour of travel back from a work site.

74.    In addition, Defendant has not paid Plaintiff Ogle for the time spent traveling between inventory sites within a given day and has not compensated Plaintiff Ogle for time spent after completing inventory and before departure from the inventory site.

75.    On approximately December 31, 2024,Plaintiff Ogle and other WIS workers based out of Grand Junction, Colorado informed Defendant that they would be going out on strike on January 15, 2025, unless WIS satisfied his and other workers' wage demands that they had submitted to WIS on forms provided to them by the Colorado Department of Labor and Employment (CDLE), in addition to meeting other demands.

76.    On approximately January 15, 2025, WIS issued Ogle a check for previously uncompensated travel time, but did not provide him with a pay stub or other documents detailing

the number of hours for which he was compensated nor the rate at which it compensated him for those hours of work.

77.    As Defendant had failed to meet its legal obligations, or Plaintiff's and the other workers' demands, and noting that it had retaliated against a worker for engaging in protected activity, Plaintiff Ogle and the other workers went out on strike on January 15, 2025.

78.    On January 30, 2025, Plaintiff Ogle and the other workers informed WIS that they would unconditionally return to work with respect to all local jobs in Mesa County, beginning on February 1, 2025.

79.    On February 6, 2025, Defendant informed Ogle and the other striking workers that it would not reinstate Plaintiff and the other striking employees' employment unless they agreed to travel without full compensation. WIS informed Ogle and the other workers that if they did not agree to these terms, they would be permanently terminated.

80.    Fearing the permanent loss of his job, Ogle notified WIS On February 13, 2025, that he would unconditionally return to work on February 20, 2025.

81.    Plaintiff Ogle returned to work on approximately February 25, 2025.  However, Defendant refused to place him back on his regular full-time schedule and instead scheduled him for 2 or three stores a week, instead of his previously scheduled full-time work schedule, thereby reducing his weekly hours from a full-time schedule to approximately 15-20 hours a week.

## FACTS RELATING TO PLAINTIFF KORY FINN

82.    Plaintiff Finn began working for Defendant as an inventory specialist in approximately October of 2023.

83.    At all times during his employment for WIS, Defendant has compensated Mr. Finn at the rate of $18.00 for all inventory work performed in stores and the applicable state minimum wage for travel time.  However, Defendant has not compensated Plaintiff for the first hour of travel out to the work site or the last hour of travel back from a work site.

84.    On approximately December 31, 2024, Plaintiff Finn and other WIS workers based out of Grand Junction, Colorado informed Defendant that they would be going out on strike on January 15, 2025, unless WIS satisfied his and other workers' demands for payment for wages that he and other workers had submitted to WIS, in addition to meeting other demands.

85.    On approximately January 13, 2025, Plaintiff Finn submitted an individual wage complaint to the Colorado Department of Labor and Employment.

86.     On January 15, 2025, WIS issued Finn a check for previously uncompensated travel time, but did not provide him with a pay stub or other documents detailing the number of hours for which he was compensated nor the rate at which it compensated him for those hours of work.

87.     As Defendant had failed to meet its legal obligations in full, and Plaintiff's and the other workers' demands, and noting that it had retaliated against a worker for engaging in protected activity, Plaintiff Finn and the other workers went out on strike on January 15, 2025.

88.     On approximately January 30, 2025, Plaintiff Finn and the other workers informed WIS that they would unconditionally return to work with respect to all local jobs in Mesa County, beginning on February 1, 2025.

89.     On approximately February 6, 2025, Defendant informed Finn and the other striking workers that it would not reinstate Plaintiff and the other striking employees' employment unless they agreed to travel without full compensation. WIS informed Finn and the other workers that if they did not agree to these terms, they would be permanently terminated.

90.     Fearing the permanent loss of his job, Plaintiff Finn notified WIS On February 13, 2025, that he would unconditionally return to work on February 20, 2025.

91.     Plaintiff Finn returned to work on approximately February 25, 2025.  However, Defendant refused to place him back on his regular full time schedule and instead scheduled him for two or three stores a week, instead of his previously scheduled full-time work schedule, thereby reducing his weekly hours from a full-time schedule to approximately 20-25 hours a week.

## FACTS RELATING TO PLAINTIFF DAVID RHOADS

92.     Plaintiff Rhoads began working for Defendant as an inventory specialist in approximately August of 2022.

93.     At all times during his employment for WIS, Defendant Defendant has compensated Mr. Finn at the rate of $21.00 for all inventory work performed in stores and the applicable state minimum wage for travel time.  However, Defendant has not compensated Plaintiff for the first hour of travel out to the work site or the last hour of travel back from a work site.

94.     On approximately December 31, 2024, , Plaintiff Rhoads and other WIS workers based out of Grand Junction, Colorado informed Defendant that they would be going out on strike on January 15, 2025, unless WIS satisfied his and other workers' demands for payment for wages that he and other workers had submitted to WIS, in addition to meeting other demands.

95.    On approximately January 9, 2025, Plaintiff Rhoads submitted an individual wage complaint to the Colorado Department of Labor and Employment.

96.    On approximately January 16, 2025, WIS issued Rhoads a check for previously uncompensated travel time, but did not provide him with a pay stub or other documents detailing the number of hours for which he was compensated nor the rate at which it compensated him for those hours of work.

97.    As Defendant had failed to meet its legal obligations, and Plaintiff's and the other workers' demands, and noting that it had retaliated against a worker for engaging in protected activity, Plaintiff Finn and the other workers went out on strike on January 15, 2025.

98.    On approximately January 30, 2025, Plaintiff Rhoads and the other workers informed WIS that they would unconditionally return to work with respect to all local jobs in Mesa County, beginning on February 1, 2025.

99.    On approximately February 6, 2025, Defendant informed Rhoads and the other striking workers that it would not reinstate Plaintiff and the other striking employees' employment unless they agreed to travel without full compensation. WIS informed Rhoads and the other workers that if they did not agree to these terms, they would be permanently terminated.

100.    Fearing the permanent loss of his job, Plaintiff Rhoads notified WIS On February 13, 2025, that he would unconditionally return to work on February 20, 2025.

101.    Plaintiff Rhoads returned to work on approximately February 25, 2025.  However, Defendant refused to place him back on his regular full time schedule and instead scheduled approximately 29 hours of work in his first week back and approximately 35 hours in his second week after return, instead of his previously scheduled full-time work schedule, thereby reducing his weekly hours by approximately 15-20 hour.

## Facts Relating to Class

102.    During all times material to this Complaint, Plaintiffs Harrison and Guijosa (the "Representative Plaintiffs") have worked as members of an inventory crew of approximately 20 workers (the "crew" at any given time the Class") for Defendant that is based out of Grand Junction, Colorado.

103.    During all times material to this Complaint, Defendant has assigned Representative Plaintiffs and the Class Members to perform inventory services at different retail stores located throughout the state of Colorado.

104.    During all times material to this Complaint, Defendant has required
Representative Plaintiffs and the Class members to perform approximately 90% of their
inventory services work at remote locations, which has required the Representative Plaintiffs and
the Class members to travel, on average, up to three hours of travel, each way, to these locations.

105.    During all times relevant to this Complaint, Defendant has required
Representative Plaintiffs and the Class Members to regularly work in excess of forty (40) hours
of work in a given workweek, with Representative Plaintiffs and the Class Members regularly
working a schedule of approximately sixty (60) hours in a given work week.

106.    During all times material to this Complaint, Defendant has regularly required
Representative Plaintiffs and the Class Members to work in excess of 12 hours in a given work-
day, with Defendant normally requiring Representative Plaintiffs and the Class Members to work
approximately 3 days a week which involved 12 hours of work or more. For example, on March
9, Defendants required Plaintiff Harrison and several other Class Members to work
approximately 18 hours in one day.

107.    During all times material to this Complaint, Defendant has required
Representative Plaintiffs and the Class Members to report to its loading site located at 3198
Patterson Road, No. 105, Grand Junction, CO 81504 ("the Loading Site"), before traveling to
perform inventory work at its different retail stores where it has conducted inventory services.
However, when Defendant has assigned Representative Plaintiffs and the Class Members to
perform inventory services at stores located within the Grand Junction area, it has not required
Representative Plaintiffs or the Class Members to arrive to the Loading Site prior to performing
inventory services at the retail store locations.

108.    During all times material to this Complaint, Defendant has required
Representative Plaintiffs and the Class Members to arrive to the Loading Site at a designated
time, where it has then required Representative Plaintiffs and the Class Members to perform
work, consisting of loading vehicles up with equipment necessary for the completion of their
inventory work, including accounting machines, printers, tablets, and ladders, all of which are
company equipment.

109.    During all times material to this Complaint, the above-described loading work has
taken Representative Plaintiffs and the Class Members approximately 15-20 minutes to
complete. In addition, if the company vehicle or designated driver does not arrive at the
Loading Site at the scheduled time, Defendant has required Representative Plaintiffs and the
Class Members to be engaged to wait up to 15 minutes at a time prior to loading the vehicles.

110.    During all times material to this Complaint, Defendant has required
Representative Plaintiffs and the Class members to ride in company vehicle(s) for travel to the
inventory sites. Furthermore, Defendant has required Representative Plaintiffs and the Class

Members to sit in assigned seats in the vehicles Defendant has provided for their transportation to the inventory sites.

111.    Upon departure of Representative Plaintiffs and the Class Members in the company vehicles from the Loading site, Defendant has required Representative Plaintiffs and the Class members to participate in telephone discussions whereby it has provided Representative Plaintiffs and the Class members with instructions on how to complete the inventory at the assigned store(s), how to complete the job most efficiently, where to place crew members during the inventory, and what to do in the case that the crew was missing employees. Representative Plaintiffs and the Class members estimate that these discussions ranged from approximately 1-2 hours in duration, and often occurred multiple times during one work-day. The said conversations also occurred on days where Representative Plaintiffs and the Class Members were not scheduled for work and were accordingly not compensated for that work time.

112.    In addition, during trips to assigned inventory sites, Defendant has required Representative Plaintiffs and the Class Members to conduct detours to other inventory sites to pick up equipment from other locations, but has not compensated Representative Plaintiffs and the Class Members for this travel time.

113.    In addition, at all times material to this Complaint, Defendant has required Representative Plaintiffs and the Class Members to arrive at the inventory sites at a specified time.  However, before commencing the inventory process, Defendant has required Representative Plaintiffs and the Class members to wait outside the store for approximately 30 minutes to 1 hour for the store associate to arrive or the supervisor to set up the store for the inventory. During this time, Defendant has required Representative Plaintiffs and the Class members to perform work tasks such as downloading information and software necessary for the completion of the inventory at the specified store. Defendant has not compensated Representative Plaintiffs and the Class members for this work time.

114.    In addition, during all times material to this Complaint, Defendant has automatically clocked Representative Plaintiffs and the Class members out, after completion of the counting of the inventory items at the inventory sites, but has subsequently required them to perform work tasks, such as making corrections to the inventory count collecting equipment from the store and transporting it back to the company vehicles, while the inventory supervisor closed out the store. Plaintiffs estimate that this process has taken on average 1 – 3 hours at a time, for which Representative Plaintiffs and the Class Members have not been compensated.

115.    Additionally, during all times material to this Complaint, Defendant has automatically clocked out Representative Plaintiffs and the Class Members for a 30-minute meal break each day, although Plaintiffs and the Class members have not been able to take an uninterrupted meal break for approximately 50% of their work-days.

116.     During all times material to this Complaint, Defendant has also failed to provide Representative Plaintiffs and the Class Members with a 10-minute rest break for every 4 hours or every major fraction thereof for which they have worked for Defendant.  Representative Plaintiffs estimate that Defendant failed to permit Representative Plaintiffs and the Class Members to take a required 10-minute rest break on approximately 20% of the required occasions.

117.     On frequent occasions, Defendant has required Representative Plaintiffs and the Class members to travel to remote work locations which has required them to stay overnight at locations away from their home residences.  For example, on approximately December 13, 2024, Defendant required several Class Members to travel to Springfield, Utah for work and stay overnight.  In these instances, Defendant has not compensated Plaintiffs and the Class Members for all travel time from the departure origin to the inventory locations and back to the point of origin.

118.     In addition, frequently throughout the course of Representative Plaintiffs and the Class members' course of employment, Defendant has required Representative Plaintiffs and the Class Members to travel to multiple inventory sites in a given work-day. During all times material to this Complaint, Defendant has not compensated Representative Plaintiffs and the Class Members for the time they have spent traveling between different inventory sites.

119.     Furthermore, during all times material to this Complaint, Defendant has failed to compensate Representative Plaintiffs and the Class Members with overtime pay for all hours they worked in excess of 40 in a given work week or all hours they worked in excess of 12 in a given work-day, such as on the dates of December 13, 2024 and March 9, 2025.

120.     On or around December 31, 2025, Plaintiff Harrison on behalf of herself and the other Class Members sent a written demand to Defendant for their unpaid wages. At the same time, Representative Plaintiffs and several other Class members announced that they would be going out on strike on January 15, 2025.

121.     On approximately January 15, 2025, Defendant responded to Representative Plaintiffs and the Class Members written demand for payment of their wages, by depositing sums into Plaintiffs' and the Class Members' direct deposit account, over the next several weeks. Defendant did not issue Representative Plaintiffs and the Class Members paystubs, detailing the hours which they were being compensated for, the dates which they were being issued backpay for, the hourly rate they were receiving for the various wage payments, or any deductions applied to their wages,.  Upon review of the payments made, it became clear to Representative Plaintiffs and the Class Members, that Defendant did not issue them payment at the overtime rate for the hours they worked in excess of forty (40) hours in a workweek or in excess of twelve (12) in a given workday.  In addition, it was clear to Representative Plaintiffs and the Class members that Defendant's deposits did not compensate Representative Plaintiffs and the Class Members for the time allotted for meal breaks, but during which Representative Plaintiffs and the Class

15

Members were required to perform work.  Nor did it issue Representative Plaintiffs and the Class Members payment for unused rest breaks, pre and post-inventory work, or time they spent traveling between inventory sites during the same day.

122.    Furthermore, following Plaintiffs and the other striking workers returned to work on approximately February 25, 2025, Defendant promised to compensate Plaintiffs and the other works for all travel time.  However, despite this promise, Defendant has failed to correct its illegal practices and continues to deprive Plaintiffs and the Class Members of wages for all time spent working.  For example, on approximately March 9, 2025, where Plaintiff Harrison and other Class Members Spent approximately 12.4 hours traveling and were compensated for only approximately 9.7 hours of travel time.

123.    As a result of Defendant's failure to permit Representative Plaintiffs and the Class Members to take a 10-minute rest break for every four hours of consecutive work they performed or every major fraction thereof, Defendant benefited from 10 minutes of work performed by Representative Plaintiffs and the Class Members for each 10-minute rest break they were deprived of because Defendant required them to work during this otherwise would be paid rest time.

124.    Defendant has not paid Representative Plaintiffs or the Class members supplemental pay to compensate them for the 10-minute rest breaks they have been denied during their employment.

125.    Defendant WIS is, or by law should be, in possession of the records from which the amount in damages related to Representative Plaintiffs' and the Class Members' cause of action can be calculated.

126.    WIS has failed to pay Representative Plaintiffs and the Class members overtime premiums for all hours worked in excess of 40 per week or 12 in a day or 12 consecutive hours regardless of the start and end time of their workdays, has failed to provide compensated 10-minute rest breaks to Representative Plaintiffs and the Class Members, has failed to compensate Representative Plaintiffs and the Class Members for the "meal breaks" which were automatically deducted from their working hours but during which Representative Plaintiffs and the Class Members' were required to perform work, and has failed to pay Representative Plaintiffs and the Class Members all earned, vested, and determinable wages, in violation of the Colorado Constitution, Const. Art. 18, § 15, the Colorado Wage Act, C.R.S. 8-4-101 et seq., ("CWA"), and the Colorado Overtime and Minimum Pay Standards Order ("COMPS Order"), 7 CCR 1103-1.

127.    Representative Plaintiffs' and the Class Members' claims for unpaid wages and overtime under the CWA are limited to three years before the filing of this Complaint until the resolution of this action.

128.    Accordingly, Defendant is liable to Representative Plaintiffs and the Class members for back wages, statutory damages and penalties, pre- and post-judgment interest, liquidated and penalty damages, reasonable attorney's fees and the costs of litigation, under the above referenced law

## Facts Relating to Retaliation Claims

129.    On or around January 15, 2025, representatives of Defendant's company met with Plaintiff Harrison and Plaintiff Guijosa in person to discuss Plaintiffs' and the striking workers' wage demands.

130.    During this meeting, Defendant's agents questioned Guijosa, Harrison and the other employees present as to who among those present and their co-workers would be going out on strike.  Defendant's agents informed Representative Plaintiffs and the other workers that it was "silly" that they were going out on strike. In addition, during this meeting a representative of WIS acknowledged that WIS had not paid Plaintiffs and the Class Members all their earned wages.

131.    Around January 14, 2025, WIS's District Manager, Tracy Taveras, in response to Plaintiffs' and the Class Members' complaints about the non-payment of their wages and their working conditions, terminated Plaintiff Vanessa Guijosa by clearing her from the work schedule and removing her access rights to the Company's software programs and interface.

132.    On approximately January 16, 2025, Plaintiff Guijosa received a text message from Defendant's Director of Human Resources, stating that Plaintiff Guijosa would be reinstated in whole by the Vice President of her division.  The following day three members of WIS management, Amber Hughes, Kari Wilson, and Andrea Lnu came to Grand Junction and offered Ms. Guijosa a promotion to area Manager.    Within 48 hours of this meeting,  a conversation took place with WIS's Denver management team, Plaintiff Guijosa, and Grand Junction employee Robert Franklin.   In this meeting, Defendant's representatives informed Ms. Guijosa that if she continued to participate in strike activities and support her co-workers organizing effort, that they would rescind their offer.  Ms. Guijosa refused to accept the newly imposed limiting conditions on the employment offer, and Defendant revoked her promotion.

133.    On approximately February 17, 2025, Representative Plaintiffs and the other striking workers informed Defendant of their intention to return to work.  However, when Defendant provided Plaintiffs Guijosa, Harrison, Ogle, Bouldon,  Sanchez, Finn, and Rhoads with their new work schedules, it significantly cut Plaintiffs Harrison's, Guijosa's, Ogle's Bouldon's, Sanchez's, Finn's and Rhoads', and the other striking workers'  working schedules providing many with 1 to 3 days of work  a week, instead of their previously scheduled fulltime 5-day workweeks.

134.    In addition, Defendant removed Plaintiff Bouldon from her position as a driver and deprived her of the extra hours and benefits of that task/position.

17

## CLASS ALLEGATIONS

135.    Representative Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

136.    In addition to bringing their claims individually, Representative Plaintiffs also bring this case as a class action on behalf of a class of all similarly situated employees (the Class") pursuant to C.R.C.P. 23.

137.    The Class is defined as follows:

> All non-exempt hourly employees who were employed by WIS as inventory specialists or inventory supervisors and worked out of the Grand Junction hub located at 3198 Patterson Road, No. 105, Grand Junction, CO 81504 at any time during the time-period dating back from three years prior to the filing of this Complaint until and through the termination of this lawsuit.

138.    The Class satisfies the prerequisites and requirements of C.R.C.P. 23 because:

a.    The Class consists of at least fifty employees, and individual joinder of all such employees is impracticable but easily determinable through the employment records of the Defendant;

b.    There are questions of law and fact that are common to the Class, which questions predominate over issues affecting only individual Class Members, including:

i.    Whether WIS has properly compensated Representative Plaintiffs and the Class Members for all hours of work they have performed, including travel time and other times they have been engaged to be waiting or during which they have performed other work duties;

ii.    Whether WIS has properly compensated Representative Plaintiffs and the Class Members for all the hours they have worked in excess of forty (40) in a given work week and/or have worked in excess of 12 hours in a given work day;

iii.    Whether WIS has had a policy or practice of failing to properly compensate hourly employees for work they performed during their meal breaks;

iv.    Whether WIS has required Representative Plaintiffs and the Class Members to perform work during their meal breaks;

18

v.      Whether WIS has permitted Representative Plaintiffs and the Class Members to take a ten-minute rest break for every 4 hours or major fraction thereof that they have worked in a given work shift:

vi.      Whether WIS's policies or practices have violated the CWA;

vii.      The nature of the damages due to Representative Plaintiffs and the Class Members for WIS's violations of the CWA; and

viii.      Whether WIS's violations of the CWA are willful, as alleged.

139.      The Representative Plaintiffs' claims are typical of the Class Members' claims in that, like all other members of the purported class, and for the same reasons, they have not properly been compensated for all hours they have worked, have not been granted all 10-minute rest breaks, have not been compensated for work they have performed during their unpaid rest breaks, have not been compensated for work they have been required to perform during meal breaks, and have not been fully compensated for all overtime hours they have worked.

140.      The Representative Plaintiffs will fairly and adequately protect the interests of the Class. They have retained counsel that is experienced in wage and hour class litigation. The Representative Plaintiffs and their counsel are free from any conflicts of interest that might prevent them from pursuing this action on behalf of the Class.

141.      The prosecution of this case as a class action is superior to other methods of adjudication. The prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for WIS and potentially conflicting results for the more than 50 individual WIS workers in matters involving relatively small individual amounts of damages.

142.      Adjudications with respect to individual Class Members would, as a practical matter, be dispositive to the interests of the other Class Members or substantially impair or impede their ability to protect their interests.

143.      Moreover, WIS has acted on grounds generally applicable to the Class.

144.      On information and belief, no Class Member has expressed any interest in controlling the prosecution of a separate action or commenced their own litigation.

145.      Because of the uniformity of claims alleged in this Complaint and the fact that the Class claims will be the subject of representative documentary evidence and testimony that the law requires the Defendant to maintain with respect to all class members, this matter will be easy for the Court to manage within this jurisdiction and venue.

**COUNT I**
**THE COLORADO WAGE AND HOUR LAW**
**C.R.S. § 8-4-101 et seq.; 7 CCR 1103-1**
**Failure to Pay wages for all Work performed**
**On Behalf of Representative Plaintiffs and all Class Members**

146.    Representative Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

147.    At all times relevant to this Complaint, Representative Plaintiffs and the Class Members have been "employee(s)" under the CWA. C.R.S. § 8-4-101(5) and 7 CCR 1103-1, Rule 2.6.

148.    At all times relevant to this Complaint, Defendant has been the "employer[s]" of Representative Plaintiffs and the Class Members" under the CWA. C.R.S. § 8-4-101(6) ("'Employer' has the same meaning as set forth in the federal 'Fair Labor Standards Act', 29 U.S.C. sec. 203(d)") and 7 CCR 1103-1, Rule 2.7.

149.    During work weeks in which Representative Plaintiffs and the Class Members performed forty (40) or less hours of work, Defendant failed to pay Plaintiffs and the Class Members for all the "time worked," as that term is defined in 7 C.C.R. 1103-1, Rule 1.9, including compensable travel time, time spent participating in work discussions or receiving work instructions, and other time spent performing work duties.

150.    Defendant's refusal to pay Representative Plaintiffs and the Class Members their agreed upon wage rate for all hours they worked violates the CWA.

151.    Because Defendant has been aware or should have been aware that its conduct violated the CWA, but nevertheless failed to pay Representative Plaintiffs and the Class Members their agreed-upon wages for all hours they worked when payment was due, its violations were willful.

152.    More than 14 days have passed since Representative Plaintiffs and the Class Members sent a written demand for full payment of all their unpaid wages, and this Complaint serves as a written demand for all outstanding unpaid wages within the three years preceding the filing of this Complaint, . To date, Defendant has failed to pay Representative Plaintiffs and the Class Members. Defendant's continued failure to fully pay Representative Plaintiffs and the Class Members all of  their earned wages, make it liable not only for back wages, but also for liquidated damages and such penalties as established in the above-stated law, along with attorneys' fees, pre-and post-judgment interest and litigation costs, as will be proven at trial.

## COUNT II:

VIOLATIONS OF THE COLORADO WAGE AND HOUR LAW
C.R.S. § 8-4-101 et seq.; 7 CCR 1103-1
Failure to Pay Overtime Premiums
**On Behalf of Representative Plaintiffs and the Class Members**

153.     Representative Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

154.     At all times relevant to this Complaint, Defendant has been the Representative Plaintiffs' and the Class Members' employer" under the CWA. C.R.S. § 8-4-101(6) ("'Employer has the same meaning as set forth in the federal 'Fair Labor Standards Act', 29 U.S.C. sec. 203(d)") and 7 CCR 1103-1, Rule 1.6.

155.     At all times relevant to this Complaint, Representative Plaintiffs and the Class Members have been Defendant's "employee[s]" under the CWA. C.R.S. § 8-4-101(5) and 7 CCR 1103-1, Rule 1.5.

156.     Representative Plaintiffs and the Class Members have regularly worked in excess of 40 hours per week, or 12 hours in a day regardless of their start and end times.

157.     Defendant has maintained a consistent practice of not fully compensating Representative Plaintiffs and the Class Members for all work-related travel time they have been engaged to perform and has similarly failed to compensate Plaintiffs and the Class Members for other times in which they were required to perform work while not conducting inventory of retail stores and/or have been engaged to be waiting to perform work.

158.     Defendant owes Representative Plaintiffs and the Class Members overtime pay for all hours they have worked over 12 hours a day and over forty (40) hours in a given work week, but were not compensated for at the premium rate because Defendant has not properly record the total hours they worked or compensated them for all of the time they have been required to perform work.

159.     Because WIS was aware, or should have been aware, that its conduct has violated the CWA, but nevertheless failed to pay Representative Plaintiffs and the Class Members their overtime wages, its violations have been willful.

160.     As a result, WIS has failed to pay Representative Plaintiffs and the Class Members at their overtime rate for all hours worked in excess of 40 per week, or 12 in a day regardless of start and end time, during the time period beginning three years preceding the filing of this Complaint up until and through the filing of this Complaint and the termination of this litigation.

161.    Defendant's failure to fully pay Representative Plaintiffs and the Class Members back pay will make it liable not simply for back wages, but also statutory damages, penalties and liquidated damages set out in the above law, along with reasonable attorney's fees, pre-and post-judgment interest and litigation costs, as will be proven at trial.

<u>**COUNT III:**</u>
VIOLATIONS OF THE COLORADO WAGE AND HOUR LAW
C.R.S. § 8-4-101 et seq.; 7 CCR 1103-1, Rule 5.1
Failure to Comply with State Rest and Meal Break Requirements
**On Behalf of Representative Plaintiffs and the Class Members**

162.    Representative Plaintiffs hereby incorporate the allegations in each of the foregoing paragraphs as though fully set forth herein.

163.    Under Colorado law, employees are entitled to paid ten-minute rest breaks, for every four hours of work, or major portions thereof. 7 CCR 1103-1, Rule 5.2.

164.    In addition, under Colorado law, employees are entitled to a thirty-minute unpaid meal break.  If an employee is required to perform work during a meal break, he/she must be compensated for the entire duration of the 30-minute meal break. *See* 7 CCR 1103-1, Rule 5.2.

165.    Defendant has failed to provide Representative Plaintiffs and the Class Members rest breaks at numerous times during the statutory time period.

166.    In addition, Defendant has regularly required Representative Plaintiffs and the Class Members to work during their meal breaks

167.    For every rest break Representative Plaintiffs and the Class Members have been denied, WIS has effectively extended their shifts by 10 minutes without compensation for that time. 7 CCR 1103-1, Rule 5.2.4.

168.    Defendant, by automatically deducting 30 minutes of time from the Representative Plaintiffs' and Class Members' shifts, regardless of whether they actually received a 30-minute uninterrupted meal period, has failed to compensate Plaintiffs and the Class Members for work they have been required to perform during their meal breaks.

169.    Rest periods must be paid at either the employee's agreed upon rate of pay, or the legally required rate of pay, whichever is higher. 7 CCR 1103-1, Rule 5.2.4.

170.    Because Defendant has regularly required Representative Plaintiffs and the Class Members to work in excess of forty (40) hours a week, Plaintiffs and the Class Members are owed back pay for each rest break they have been denied at their applicable overtime rate for all

rest breaks they have been denied during weeks in which they also worked in excess of forty (40) hours.

171.    For workweeks in which Representative Plaintiffs and the Class Members have worked forty (40) hours or less and were denied 10-minute rest breaks, Defendant owes Representative Plaintiffs and the Class Members unpaid wages for that time at their regular rate of pay.

172.    The records of Representative Plaintiffs' and the Class Members' number of rest breaks owed are or should be in the exclusive control of the Defendant.

173.    Because WIS was aware, or should have been aware, that its conduct has violated the CWA, but nevertheless failed to provide compensated 10-minute rest breaks and/or uninterrupted meal breaks to Representative Plaintiffs and the Class members, its violations have been willful.

174.    WIS has failed to and continues to fail to provide all rest and uninterrupted meal breaks as required by law, and as a result owes Representative Plaintiffs and the Class Members for such back wages, statutory damages, along with reasonable attorney's fees, pre- and post-judgment interest and litigation costs, as will be proven at trial, and subject to the conditions of controlling law cited above,

## <u>COUNT IV:</u>
VIOLATIONS OF THE COLORADO WAGE AND HOUR LAW
C.R.S. § 8-4-120
Violation of CWA's Anti-Retaliation Provisions
**On Behalf of Plaintiffs Harrison, Guijosa, Sanchez, Bouldon, Ogle, Finn, and Rhoads**

175.    Plaintiffs hereby incorporate all preceding paragraphs as though set forth fully herein.

176.    Section 120 of the Colorado Wage Act provides, "An employer shall not intimidate, threaten, restrain, coerce, blacklist, discharge, or in any manner discriminate or retaliate against any employee who has" asserted a complaint regarding the non or under payment of wages.

177.    On approximately December 31, 2025, Plaintiffs Harrison, Guijosa, Sanchez, Bouldon, Ogle, Finn, and Rhoads, along with other workers employed by Defendant, issued a written complaint and demand for their unpaid wages and announced that they would be participating in a work stoppage if Defendant did not satisfy its legal obligations to pay them all their earned wages.

23

178.    On approximately January 15, 2025, Defendant issued Plaintiffs Harrison, Guijosa, Sanchez, Bouldon, Ogle, and Finn, partial but not full payment in response to their wage demands.

179.    On approximately January 14, 2025, noting that Defendant had not satisfied its legal obligations under the CWA, Plaintiffs Harrison, Guijosa, Sanchez, Bouldon, Ogle, Finn, and Rhoads, along with other WIS workers, went out on strike.

180.    On approximately February 13, 2025, Plaintiffs Harrison, Guijosa, Sanchez, Bouldon, Ogle, Finn, and Rhoads notified Defendant of their unconditional intention to return to work.

181.    After Plaintiffs Harrison, Guijosa, Sanchez, Bouldon, Ogle, Finn , and Rhoads announced their intention to return to work, Defendant failed to place them back on their previously held full time schedules. In addition, Defendant refused to schedule Bouldon as a driver or provide her with the benefits she had previously received in accordance with that task/position.

182.    Additionally, after Plaintiff Guijosa made written and verbal complaints about Defendant's failure to comply with the wage and hour requirements of the CWA, Defendant terminated Ms. Guijosa's employment by removing her from all work schedules and revoking her access to WIS's software programs and platforms.

183.    Although Defendant later reinstated Ms. Guijosa, and offered her a promotion to Area Manager, proximately thereafter, on approximately January 15, 2025, Guijosa was questioned as to whether she still intended to go on strike with the other workers, and when. MS. Guijosa informed Defendant that because Defendant had still not satisfied its legal obligations to its workers, that she still intended to go on strike, it revoked Ms. Guijosa's promotion.

184.    Defendant's aforementioned actions were retaliatory in nature and predicated on Plaintiff Harrison's, Guijosa's, Sanchez's, Bouldon's, Ogle's Finn's, and Rhoads' assertion of their rights as employees covered by the CWA.

185.    As a result of Defendant's violations of the CWA's anti-retaliation provisions, Plaintiffs Harrison, Guijosa, Sanchez, Bouldon  Ogle, Finn and Rhoads  are entitle to the wages they have been deprived of because of Defendant's reduction of their working hours, liquidated damages in an amount equal to two times the their denied wages, reinstatement to their full-time schedules, the award of a $50 penalty for a day to each Plaintiff whose rights have been violated for each day Defendant has continued its retaliatory actions, pre and post judgment interest and reasonable attorneys' fees and costs relating to the litigation of these claims.

**COUNT V:**

VIOLATIONS OF THE COLORADO HEALTHY FAMILIES AND WORKPLACES ACT
(HFWA)
C.R.S. § 8-13.3-401, *et seq.*
Failure to Provide Paid Sick Leave
**On Behalf of Plaintiff Harrison**

186.     Plaintiffs hereby incorporate all preceding paragraphs as though set forth fully herein.

187.     Pursuant to Section 403((2)(c) of the HFWA, every Colorado employer shall provide to its employees one hour of paid sick leave for every thirty (30) hours a worker has accumulated in work.

188.     Section 403(2)((c)( requires an employer to provide up to 48 hours of paid sick leave per year, provided that a given employee has accrued enough hours of work to accumulate 48 hours of paid sick leave.

189.     Plaintiff Harrison regularly worked in excess of fifty (50) hours in a work week and had accumulated enough hours of paid sick leave in 2024, to permit her to be compensated for a portion of the sick leave she took in November of 2024.

190.     In mid October of 2024, Plaintiff Harrison requested paid sick leave relating to a medical condition and treatment thereof on approximately November 7, 2024, that would prevent her from working for approximately six (6) weeks.

191.     Defendant, by failing to account for all the hours Ms. Harrison worked in 2024 and preceding years, falsely represented to Plaintiff on or around mid October of 2024 that Plaintiff had not accumulated enough hours to permit her to take additional sick leave in November of 2024.

192.     Accordingly, Plaintiff Harrison was required to take approximately six (6) weeks of unpaid leave in order to receive treatment for her medical condition on around November 7, 2024.

193.     As required by Section 411(4)(D of the HFWA), Plaintiff Harrison made a renewed written demand for paid sick leave on March 19, 2025.

194.    More than 14 days have passed since Plaintiff Harrison sent a written demand for full payment of all accrued sick leave, and   this Complaint serves as an additional written demand for all outstanding unpaid sick leave.

195.    As a result of Defendant's violations of the aforementioned provisions of the HFWA, Plaintiff Harrison is entitled to an award in the amount of paid sick leave she was wrongfully denied, plus an equal amount in liquidated damages, pursuant to C.R.S. § 8-13.3-411(d)(ii) and C.R.S. § 8-5-104)2)(a).

PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully ask the Court to issue a judgment in their favor and against the Defendant, ordering:

A.    An award of unpaid back overtime wages to Plaintiffs and the Class under the CWA;

B.    An award of unpaid back break time wages to Plaintiffs and the Class Members under the CWA;

C.    An award of statutory damages, willful damages, liquidated damages, and penalties to Plaintiffs and the Class Members as proven at trial under the CWA;

D.    An award to Plaintiffs Harrison, Guijosa, Sanchez, Bouldon,  Ogle, Finn, and Rhoads  in an amount equal to the wages they have been denied due to Defendant's retaliatory reduction of their working hours, plus liquidated damages in an amount equal to two times the amount of their denied wages, and the award of penalties in the amount of $50/day to each Plaintiff who has been placed on a reduced schedule by Defendant for each day Defendant has held him/her on a reduced schedule;

E.    Reinstatement of Plaintiffs Harrison, Guijosa, Sanchez Bouldon, Ogle, Finn, and Rhoads to their full-time positions and schedules;

F.    That Defendant pay the Plaintiffs' and the Class Members reasonable attorneys' fees and costs incurred in bringing the Plaintiff's claims, along with pre- and post-judgment interest;

G.    An award of service payments to the Representative Plaintiffs for their services on behalf of the Class in this litigation; and

H.      A declaratory judgment finding that the Defendant violated controlling state law concerning its illegal wage and hour practices;

I.      An award in the amount of paid sick leave wrongfully denied to Plaintiff Harrison, plus an equal amount in liquidated damages pursuant to C.R.S. § 8-13.3-411(4)(ii) and C.R.S. § 8-5-104(2)(A);

J.      A waiver of the cost of the filing fee in this action pursuant to C.R.S. § 8-13.3-411(4)(e); and

K.      Any other and further relief that may be equitable and just.

Dated 21st day of March, 2025.


Respectfully submitted,
/s/ *Trent R. Taylor*
Trent R. Taylor (61007)
David H. Miller4 (8405)
Wilhite & Miller Law Firm 1600 Ogden Street
Denver, Colorado 80218
303.839.1650
ttaylor@wilhitelawfirm.com
dhmiller@wilhitelawfirm.com
*Attorneys for Plaintiff*